UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| B&T Rentals, Inc. | Civil Action No. 6:20-00598 |
| Versus | Judge Michael J Juneau |
| Black Valley Directional Drilling LLC | Magistrate Judge Carol B Whitehurst |

### REPORT AND RECOMMENDATION

Before the undersigned, on referral from the district judge, are (1) a Motion To Dismiss For Lack Of Subject-Matter Jurisdiction, Improper Venue, And Failure To State A Claim, In Accordance With Rules 12(b)(1), (3) and (6) filed by XTO Energy Inc. ("XTO") [Rec. Doc. 16], B&T Rentals, Inc.'s ("B&T") Memorandum in Opposition [Rec. Doc. 28] and XTO's Reply [Rec. Doc. 31]; and (2) a Motion To Dismiss For Lack Of Subject-Matter Jurisdiction, Improper Venue, And Failure To State A Claim, And Motion To Dismiss For Lack Of Personal Jurisdiction Pursuant To Fed. R. Civ.P. 12(b)(2) filed by Defendant, Texas Citizens Bank, N.A. ("Texas Citizens") [Rec. Doc. 23-1] which is unopposed.[1] For the reasons that follow, the Court will recommend that XTO's Motion To Dismiss be denied and Texas Citizen's Motion To Dismiss be denied in part and granted in part.

---

[1] Pursuant to Local Rule 7.5, the deadline to file Plaintiff's opposition to the Motion was October 28, 2020. As of the date of this Report and Recommendation, Plaintiff filed no opposition to the Motion to Dismiss.

## I. FACTUAL BACKGROUND

B&T alleges XTO hired Black Valley Directional Drilling, LLC ("Black Valley") to drill oil and gas wells in New Mexico and Texas ("the New Mexico Wells"). B&T claims that Black Valley rented tools and equipment from B&T which were delivered to the well sites in New Mexico and Texas. B&T alleges Black Valley never paid for those rentals. B&T filed this lawsuit against Black Valley for breach of the rental agreements, and against Black Valley's managing members for misappropriation of the funds that were to be used to pay for the rentals.[2]

B&T also makes claims against XTO, alleging the tools rented by Black Valley were necessary and expected by XTO to be rented and used in furtherance of the drilling operations on XTO's New Mexico Wells. As such, B&T further alleges that XTO "was a third party beneficiary to the rental contract(s) between Black Valley and B&T " and, therefore, is solidarily liable with Black Valley.

B&T's Complaint includes an additional cause of action "In the Nature of an Interpleader." B&T alleges that XTO has not paid Black Valley the full amounts it is owed for the drilling operations, and the subcontractors of Black

---

[2] In March, 2019, Texas Citizens entered into a Purchase and Sale Agreement with Black Valley. Pursuant to the Agreement, Texas Citizens acquired all of Black Valley's rights to payment of certain invoices associated with its directional drilling services performed on XTO's New Mexico Wells. Texas Citizens recorded a Claim of Lien in the office of Eddy County Clerk to secure the amounts due from Black Valley..

Valley—like B&T—are entitled to make a claim to those funds.[3] B&T alleged the following claims: 1) a claim against Black Valley for failure to pay for tools and equipment it rented; 2) a claim against Black Valley's managing members for misappropriation of funds; 3) a claim that XTO is solidarily liable with Black Valley because XTO was a third party beneficiary to the Rental Agreement; and 4) a claim "In the Nature of lnterpleader."

Defendants, XTO and Texas Citizens, contend that this case should be dismissed because the Court does not have subject-matter jurisdiction over B&T's cause of action for interpleader under either 28 U.S.C. § 1335 or Federal Rule of Civil Procedure 22;[4] and, venue is improper in the Western District of Louisiana. Texas Citizens also asserts it should be dismissed because B&T lacks personal jurisdiction, general and/or specific, over it. B&T did not file an opposition to Texas Citizen's motion.

In its opposition, B&T "acquiesces to dismissal" of its interpleader claim. *R. 28, p. 19.* Additionally, B&T concedes that venue is not proper under the general venue statute but restates its venue claim contending that "venue is proper as to XTO because venue is proper as to Black Valley—XTO's solidary obligor."

---

[3] In its Motion, XTO contends the interpleader allegations are an attempt by B&T to compel XTO to interplead funds owed to Black Valley relating to the New Mexico Wells. In other words, instead of the holder of the money (XTO) filing interpleader in the venue of its choice, an entity looking to make a claim to the money (B&T) is attempting to compel an interpleader in the venue it chooses.

[4] B&T named Texas Citizen as a defendant in its First Amended Complaint. *R. 6*.

3

Based on the foregoing, the Court will grant Defendants' motion as to the interpleader claim, pursuant to Rule 12(b)(6). Thus, the only issues before the Court are whether this Court is the proper venue for B&T's claims against Defendants, and whether or not the Court has personal jurisdiction over Texas Citizens.

## II. LAW AND ANALYSIS

### A. Venue

XTO and Texas Citizens contend that venue is improper in the Western District of Louisiana, and therefore, the Court should dismiss B&T's complaint. They argue that the forum-selection clause in the equipment rental lease ("Rental Agreement") between B&T and Black Valley ('Forum-Selection Clause") is irrelevant because: (1) a forum-selection clause is only material in choosing between multiple proper venues; and, (2) the Forum-Selection Clause is not applicable to XTO, who is not a party to the Rental Agreement.

*1. Whether Venue in the Western District of Louisiana is Proper*

A defendant may move to dismiss or transfer a case for improper venue. Fed. R. Civ. P. 12(b)(3); 28 U.S.C. § 1406(a). If the Court finds that venue is improper, § 1406(a) requires the Court to "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Title 28 U.S.C. § 1391(b) sets out three categories of proper venue:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

4

    (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

    (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

"However, parties may consent to a venue that is not expressly authorized by statute." *J.D. Fields & Co. v. Shoring Eng'rs*, 391 F. Supp. 3d 698, 705 (S.D. Tex. 2019) (citing *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013)); *see also Blue Racer Midstream, LLC v. Kelchner, Inc.*, 2018 WL 993781, at *1 (N.D. Tex. Feb. 21, 2018) ("Section 1391 dictates where a plaintiff may properly bring a civil suit unless the parties negotiated a forum-selection clause."); *WorldVentures Holdings, LLC v. MaVie*, 2018 WL 6523306, at *14 (E.D. Tex. Dec. 12, 2018)("It is well–settled that venue is proper in any district agreed to under a forum selection clause—even if that district would not have been proper under § 1391."). In the Fifth Circuit, a forum-selection clause is "prima facie valid and enforceable unless the opposing party shows that enforcement would be unreasonable." *Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). The Fifth Circuit "appl[ies] a 'strong presumption' in favor of enforcing mandatory forum-selection clauses." *Al Copeland Invs., L.L.C. v. First Specialty Ins. Corp.*,

5

884 F.3d 540, 543 (5th Cir. 2018). A forum-selection clause is "unreasonable" if the party opposing the clause can show:

> (1) The incorporation of the forum-selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene a strong public policy of the forum state.

*Id.*

In its complaint, B&T claims that venue is proper in the Western District of Louisiana. *R. 1, ¶ 6A*. B&T contends that the forum-selection clause in its Rental Agreement with Black Valley provides that venue is proper in the Western District of Louisiana. The pertinent part of the Rental Agreement states:

> Any action for breach of contract or enforcement of this agreement **must** be brought in the courts of the State of Louisiana, or in the United States District Court for the Western District of Louisiana. Any action to determine the respective rights of the Lessee and/or Lessor (including any successors or assigns) relating to its commercial business relationship with B&T RENTALS, INC. and/or any transactions contemplated by this agreement, or for damages of any nature whatsoever claimed against B&T RENTALS, INC., and any suit for damages, and/or any declaratory action, shall be brought either in the 15th Judicial District Court for the Parish of Lafayette, Louisiana or in the United States District Court for the Western District of Louisiana. The venue for any such action **shall be** Lafayette Parish, Louisiana. This contract will be deemed to have been executed in Lafayette Parish, Louisiana. Delivery of the rental equipment

6

delivered to Lessee shall be deemed to have occurred in Lafayette Parish, Louisiana.[5]

Defendants assert that the case should be dismissed because the Western District of Louisiana is not a proper venue under § 1391 and the Forum-Selection Clause in the Rental Agreement is not applicable to XTO, who is not a party to those agreements. *R. 17, pp. 8–11*. Defendants do not allege that the Forum-Selection Clause is unreasonable, do not argue that the Western District of Louisiana falls outside of the scope of the Forum-Selection Clause, nor seek a venue transfer for forum non conveniens under § 1404(a). Rather, Defendants claim that venue is improper and should be dismissed because the Forum-Selection Clause may not expand B&T's choice of venue beyond those available under § 1391. In support, Defendants rely on the Supreme Court's opinion in *Atlantic Marine Construction Company, Inc. v. United States District Court for the Western District of Texas*, 571 U.S. 49 (2013)("*Atlantic Marine*"), which they claim establishes that "if the original venue is proper, a party may seek to have it transferred to another proper venue pursuant to a forum-selection clause agreed to by all parties. But the forum selection clause does not, in and of itself, make a venue proper." *R. 17, p. 10.*

---

[5] The parties do not address whether the Forum-Selection Clause is mandatory versus permissive. Based on the language of the clause and for purposes of the motions only, the Court finds the Forum-Selection Clause is mandatory.

In *Atlantic Marine*, the defendant sought to enforce a forum-selection clause when the plaintiff filed suit in a venue that was not provided for in the clause but was otherwise proper under § 1391. *Atlantic Marine*, 571 U.S. at 53. The defendant argued that venue was "wrong" and "improper" and that, in essence, the forum-selection clause was the sole means of determining proper venue. *Id*. The Supreme Court rejected the defendant's argument, holding that the forum-selection clause did not render other venues under § 1391 improper. *Id.* at 56, 59 ("[B]ecause § 1391 made venue proper, venue could not be 'wrong' for purposes of § 1406(a)"). The Supreme Court did not, however, invalidate the forum-selection clause. *See id*. at 59. Instead, it found that although the § 1391 venue was not improper for purposes of dismissal under § 1406(a), the defendant could still seek a transfer to the agreed-upon forum for convenience under § 1404(a). *Id*. Further, the Supreme Court went so far as to say that when a party seeks to transfer venue under § 1404(a), a "forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.* at 63.

This context is important in interpreting the Supreme Court's statement in *Atlantic Marine* that "[w]hether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws...." *Id*. at 55. *Atlantic Marine* prohibits parties from invalidating statutorily proper venues under § 1391; it does not, however, prohibit parties from

8

expanding the number of available venues through voluntary agreement. *See id*. at 56 (holding that § 1391 "cannot reasonably be read to allow judicial consideration of other, extra-statutory limitations on the forum in which a case may be brought."

Defendants argue that this case should be dismissed because venue is improper under 28 U.S.C. § 1391(b). The Court disagrees.[6] It is well–settled that venue is proper in any district agreed to under a forum selection clause—even if that district would not have been proper under § 1391. *See, e.g., Huawei Techs. Co., Ltd. v. Yiren Huang*, 2018 WL 1964180, at *7–*8 (E.D. Tex. April 25, 2018).[7] As in this case, the *Huawei* court faced a factual scenario that was entirely different from *Atlantic Marine*—the plaintiff filed suit in the venue mandated by the forum-selection clause and defendants sought dismissal. Finding that dismissal based on improper venue was inappropriate, the court agreed with the holding in *Atlantic Marine* that "[w]hether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b)." *Id.*, at *7–8. Here, Plaintiff filed suit in the venue

---

[6] According to Defendants, venue can never be proper unless § 1391(b) is satisfied, regardless of a forum-selection clause. Following Defendants' premise to its logical conclusion, a forum-selection clause would never be valid unless, by chance, the venue specified in the clause happened to satisfy § 1391(b), in which case the forum-selection clause would have been completely unnecessary. Defendants' position flies in the face of the rationale underlying the very case they rely on, *Atlantic Marine*.

[7] Just as in this case, the *Huawei* court faced a factual scenario that was entirely different from *Atlantic Marine* when a plaintiff "file[s] suit in the venue mandated by the forum-selection clause." *Id.* at * 7. Finding that dismissal based on improper venue was inappropriate, the *Huawei* court agreed with the holding in *Atlantic Marine* that "[w]hether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b)." *Id.*, at *7–8.

mandated by the forum-selection clause. When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. *Atlantic Marine*, 571 U.S. at 66.

Other courts in the Fifth Circuit have enforced forum-selection clauses after *Atlantic Marine*. *See Blue Racer Midstream*, 2018 WL 993781, at *1 ("Section 1391 dictates where a plaintiff may properly bring a civil suit unless the parties negotiated a forum-selection clause."); *Apollo Endosurgery, Inc. v. Demetech Corp.*, 2020 WL 5045036, at *5 (W.D. Tex. Aug. 26, 2020) ("[T]he applicable forum selection clause ... sets venue in a state or federal court in Austin, Texas. Venue is therefore proper in this Court."); *J.D. Fields & Co., Inc. v. Shoring Engineers*, 391 F.Supp.3d 698, 705 (S.D.Tex., 2019) ("[P]arties may consent to a venue that is not expressly authorized by statute."); *WorldVentures Holdings, LLC v. Mavie*, 2018 WL 6523306, at *14 (E.D.Tex., 2018) ("It is well-settled that venue is proper in any district agreed to under a forum selection clause—even if that district would not have been proper under § 1391."). In light of these cases and in the absence of Fifth Circuit precedent invalidating forum-selection clauses that provide for venues

outside of § 1391's categories, the Court finds the Forum-Selection Clause establishes proper venue in the Western District of Louisiana.

*2. Whether the Forum-Selection Clause is Applicable to XTO*

A non-signatory to a contract containing a forum-selection or jurisdiction waiver clause may be bound by the clause if that non-signatory is "closely related to the dispute such that it becomes foreseeable that it will be bound." *D.B. Inc. v. Nat'l Admin. Sols. Corp.*, 2004 WL 865842, at *3 (N.D. Tex. Apr. 21, 2004). The Fifth Circuit has recognized a non-exclusive number of theories through which a non-signatory can be bound to an arbitration clause, which is a specialized forum-selection clause. *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517 (5th Cir. 2006) (finding the non-signatory defendant was bound to the forum-selection clause because it received benefits from the contract and benefitted specifically from a signatory's performance of the contract). Also, several district courts within the Fifth Circuit have held that a non-signatory can be bound by a forum-selection clause consenting to personal jurisdiction in a given forum, if the non-signatory or the alleged conduct is closely related to the contractual relationship. *See, e.g., Red Barn Motors, Inc. v. Nextgear Capital, Inc.*, 2014 WL 4986674, at *5–*6 (M.D. La. Sept. 29, 2014)(finding the non-signatory to the contract was bound to the forum-selection clause based on the intertwined claims theory of estoppel; *Excel Mktg. Sols., Inc. v. Direct Fin. Sols., LLC*, 2011 WL

11

1833022, at *6 (N.D. Tex. May 13, 2011); *Alt. Delivery Sols., Inc. v. R.R. Donnelley & Sons Co.,* 2005 WL 1862631, at *15–*16 (W.D. Tex. July 8, 2005); *Babin Marine, L.L.C. v. Argo Inc.*, 2000 WL 1372992 (E.D.La. Sept.21, 2000). That is, if the non-signatory is so inextricably intertwined with the signatories that he should be the subject of the forum-selection clause, it can be enforced against the non-signatory. *Huawei Technologies, Co., Ltd. v. Yiren Huang*, 2018 WL 1964180, at *9 (E.D. Tex. April 25, 2018) (holding the non-signatory competing company, created by Huawei Technologies' previous employee, was inextricably intertwined and closely related such that it was foreseeable it would be bound by the forum selection clause in the employee's employment agreement).

The Court, taking B&T's allegations as true, finds the non-signatory Defendant, XTO, closely related to Black Valley and that its conduct is inextricably intertwined with the dispute. Here, B&T alleges (1) Black Valley sent invoices to XTO which included invoices for rental of B&T's bottom hole assembly ("BHA") tools, (2) XTO entered into various agreements with Black Valley to serve as the drilling contractor on XTO's oil and /or gas drilling operations, (3) XTO provided personnel to oversee and direct the overall activities of Black Valley, and (4) XTO "clearly knew" Black Valley would lease or rent the BHA tools such as drill collars, pony collars, subs, stabilizers which were essential to XTO's drilling operations. *R. 6, ¶¶ 33-39.* Accordingly, XTO is inextricably intertwined and closely related such

that it is foreseeable XTO would be bound to the terms of the Forum-Selection Clause.

Because the XTO is bound by the Forum-Selection Clause in the Rental Agreement, it has effectively consented to jurisdiction in the Western District of Louisiana. *Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995); *Taisheng Int'l Ltd. v. Eagle Mar. Servs., Inc.*, 2006 WL 846380, at *2 (S.D. Tex. Mar. 30, 2006) ("The personal jurisdiction requirement is a right that can be waived by means of an enforceable forum selection clause in which the parties consent to personal jurisdiction in a given forum.").

### B. Personal Jurisdiction Over Texas Citizens

Texas Citizens argues that B&T's claims against it should be dismissed because this Court lacks personal jurisdiction over the claims involving Black Valley invoices stemming from the directional drilling services on the New Mexico Wells. B&T does not oppose Texas Citizens' claims of lack of personal jurisdiction.

Rule 12(b)(2) of the Federal Rules of Civil Procedure permits dismissal of a suit for lack of personal jurisdiction. In a motion to dismiss for lack of personal jurisdiction, the plaintiff must establish a prima facie showing of jurisdiction. *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). The court must accept the plaintiff's uncontroverted allegations as true and resolve any conflicts of fact in favor of finding jurisdiction. *Id*

To determine whether a federal court sitting in diversity, as in this case, has jurisdiction over the defendant, the court looks first to the long-arm statute of the forum state to determine whether the forum may exert personal jurisdiction. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 220 (5th Cir. 2012). Next, the court must ensure that exercising jurisdiction would not violate the Due Process Clause of the Fourteenth Amendment. *Id*. Because Louisiana's long-arm statute confers jurisdiction up to the limits of the Constitution, "the two inquiries fold into one." *Luv N' care, Ltd*, at 469.

The Due Process Clause of the Fourteenth Amendment guarantees that no federal court may assume personal jurisdiction of a non-resident defendant unless the defendant has certain "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The Supreme Court has recognized two types of personal jurisdiction: specific and general. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779-80 (2017).

1. *General Personal Jurisdiction*

General personal jurisdiction exists when a defendant's affiliations with the forum state are so continuous and systematic as to render the defendant essentially at home there even if the cause of action did not arise from or relate to the

defendant's purposeful contacts with the forum. *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). It is undisputed that Texas Citizens is a national banking association chartered by U.S. Office of the Comptroller of Currency and a Texas domiciliary whose principal place of business is located in Harris County, Texas. *R. 23-2, Sworn Declaration of Duncan Stewart at ¶4.* It has no offices, shareholders, directors, officers or employees who reside in the state of Louisiana, nor does Texas Citizens own or lease any assets or property in Louisiana. *Id. at ¶ 6.* B & T concedes in its First Amended and Restated Complaint that Texas Citizens is "organized under the laws of the state of Texas, having a principal corporate office at 4949 Fairmont Parkway, Suite 100, Pasadena, TX 77505," and "is a citizen of Texas." *R. 6, ¶2 F.*

B&T's allegations fail to demonstrate the type of continuous and systematic contacts that would render Texas Citizens "at home" in Louisiana. Therefore, the Court does not appear to have general personal jurisdiction over Texas Citizens.

2. *Specific Personal Jurisdiction*

Specific jurisdiction is limited to "adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). To establish specific jurisdiction, a plaintiff must show that "(1) there are sufficient (i.e., not 'random fortuitous or attenuated') pre-litigation connections between the non-

resident defendant and the forum; (2) the connection has been purposefully established by the defendant; and (3) the plaintiff's cause of action arises out of or is related to the defendant's forum contacts." *Pervasive Software*, 688 F.3d at 221. The burden then shifts to the defendant to show that the exercise of jurisdiction would be unfair or unreasonable. *Id.* at 221-22.

B&T does not dispute the following which establishes that Texas Citizens has not "purposefully directed" any of its activities towards Louisiana: (1) Citizens has not appointed an agent for service of process in any state other than Texas; (2) it is licensed to do business only in the state of Texas; and, (3) its corporate office is located in Houston, and all six of its banking centers are within the state of Texas, near Houston. *R. 23-2, ¶¶ 5-7.*

Texas Citizens further represents that its claims against XTO Energy stem from receivables purchased by Texas Citizens from Black Valley for work on the New Mexico Wells. The brokering of this sale occurred in Texas and performance of the sale, including payment of the receivables, was to take place in Texas. Finally, the original contract between XTO and Black Valley concerned the leasing of Texas equipment used for the drilling that occurred in New Mexico. *R. 23-1, p. 15.*

Based on the foregoing undisputed representations by Texas Citizens, there is nothing to suggest that any claims Texas Citizens has against XTO stem from

any contact that Texas Citizens had with Louisiana. Accordingly, specific personal jurisdiction over Texas Citizens in this Court is therefore improper.

### III. CONCLUSION

For the foregoing reasons,

**IT IS RECOMMENDED** that the Motion To Dismiss For Lack Of Subject-Matter Jurisdiction, Improper Venue, And Failure To State A Claim, In Accordance With Rules 12(b)(1), (3) and (6) filed by XTO Energy Inc. [Rec. Doc. 16], be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the Motion To Dismiss For Lack Of Subject-Matter Jurisdiction, Improper Venue, And Failure To State A Claim, And For Lack Of Personal Jurisdiction Pursuant To Fed. R. Civ.P. 12(b)(2) filed by Texas Citizens Bank, N.A. [Rec. Doc. 23-1], be **DENIED IN PART** and **GRANTED IN PART** for lack of personal jurisdiction pursuant to Rule 12 (b)(2) and that Texas Citizens Bank, N.A. be **DISMISSED WITHOUT PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

**THUS DONE AND SIGNED** this 7th day of January, 2020.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE